IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: 5555 Wyoming Boulevard NE, Apartment 5605, Albuquerque, New Mexico, 87109 and a red Dodge Journey bearing New Mexico license plate PNX253 | Case No.<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF

## AN APPLICATION FOR A SEARCH WARRANT

I, Jacob vanBrandwijk, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of criminal Procedure for a warrant to search the premises known as 5555 Wyoming Boulevard NE, Apartment 5605, Albuquerque, New Mexico, 87109, hereinafter the PREMISES, and a red Dodge Journey bearing New Mexico license plate PNX253, hereinafter THE VEHICLE, further described in Attachment A, for the things described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since March, 2017. While employed by the FBI, I have investigated federal criminal violations related to high technology or cyber crime. I have gained experience through training and everyday work relating to conducting these types of investigations. Prior to becoming a Special Agent of the FBI, I earned a Bachelor's degree in Computer Science and Master's degree in Information Assurance, and was employed in the field of information security full time for thirteen years. Moreover, I am a federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C. § 875(c), and I am authorized by the Attorney General to request a search warrant.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The information contained in this affidavit is personally known to me based on my training and experience, was gathered or revealed to me personally during the course of this investigation, or was gathered or revealed to other sworn law enforcement officers during the course of this investigation and subsequently communicated to me.

4. Based on the information set forth herein, there is probable cause to believe that violations of 18 U.S.C. § 875(c) (Threats in Interstate Communications), 18 U.S.C. § 875(d), 18 U.S.C. § 1028, 18 U.S.C. § 1030, 18 U.S.C. § 2261A and 18 U.S.C. § 2511 were committed, and that evidence of these violations may be found within THE PREMISES and THE VEHICLE.

## PROBABLE CAUSE

### *Background*

5. In early 2017, the FBI opened an investigation into harassing messages and threats sent online based on information provided by KaLani Uehara ("Uehara") and her mother Lavina Ransom ("Ransom") during a walk in visit to the FBI office in Albuquerque, New Mexico.[1] Investigation into the information provided by Uehara and Ransom uncovered a large volume of threats and harassing messages sent to and from multiple email accounts, online text messaging accounts and social media applications.

6. Over the course of several years, the FBI has interviewed victims, relatives, law enforcement officers and attorneys related to the aforementioned threats which have occurred sporadically since 2015. As a result of the FBI's investigation, on June 25, 2020, the Honorable

---

[1] I learned that Uehara made similar complaints to Rio Rancho police, Albuquerque Public Schools police, Albuquerque police, and New Mexico State Police before coming to the FBI.

U.S. Magistrate Judge Karen B. Molzen authorized a search warrant of 215 Lead Avenue SW, Apartment 2301, Albuquerque, New Mexico (hereafter THE RESIDENCE) and an arrest warrant for Uehara, later filed with the court as 20-MR-936 and 20-MJ-1238, respectively, and incorporated hereto by reference. I respectfully submit that the affidavit associated with 20-MR-936 established probable cause to believe that evidence of violations of 18 U.S.C. § 875(c), 18 U.S.C. § 875(d), 18 U.S.C. § 1028, 18 U.S.C. § 1030, 18 U.S.C. § 2261A and 18 U.S.C. § 2511 were committed, and that evidence of these violations may have been found within THE RESIDENCE. 20-MR-936 authorized the FBI to search THE RESIDENCE for evidence of these violations, including electronic devices and paper records.

7.  On June 30, 2020, the FBI executed a search of THE RESIDENCE under the authority granted by the court pursuant 20-MR-936, and did arrest Uehara at THE RESIDENCE as commanded by the court pursuant 20-MJ-1238.  Present in THE RESIDENCE at the time of the initial entry were Uehara, Ransom and Uehara's two brothers.  I made a prompt return of the appropriate search and arrest warrants the following day.

8.  Ransom was arrested on a local warrant by an APD officer during the execution of 20-MR-936. Ransom posted bail that evening, with surety Debra Johns. Due to my experience with this investigation, I know Johns to be an associate of the Ransom/Uehara family. Contact information for Johns listed on the bail bond form included a phone number and a Post Office box. Ransom's arrest was related to the theft by embezzlement of a motor vehicle. This vehicle had been used as the family's transportation, but was seized by APD in conjunction with Ransom's arrest.

9.  Shortly after the execution of 20-MR-936, I learned of additional items of evidentiary value, specifically a notebook, diary, or journal, blue or turquoise in color and with

gold colored lining, marked "moments of genius," and an iPhone (hereafter THE SUBJECT ITEMS), which were in THE RESIDENCE at the time of the executed search but were not recovered during that search. I learned this information by listening to jail calls placed between Uehara and Ransom. During these calls, Ransom described that she had found THE SUBJECT ITEMS, and additionally described searching for information contained on the iPhone.

10. Because I learned of the existence of THE SUBJECT ITEMS, and because I believe THE SUBJECT ITEMS to be relevant to the government's case against Uehara, I sought a warrant to return to THE RESIDENCE to recover these items. This warrant, later filed as 20-MR-989, was authorized on July 9, 2020 by the Honorable U.S. Magistrate Judge John F. Robbenhaar, and is incorporated hereinafter by reference.

11. Since the authorization of this warrant, I have learned of an additional jail call, on July 8, 2020, in which Uehara's brother, KU, makes reference to the iPhone and the "notes" app described in the affidavit in support of 18-MR-989.

12. On July 10, 2020, at approximately 9:00 AM, the FBI executed a search of THE RESIDENCE. No persons were encountered at the time of the search, but a high density of personal items, commensurate with the description of the condition of THE RESIDENCE articulated in 20-MR-989 was observed.

13. Because I knew that THE SUBJECT ITEMS had recently been located by Ransom based on jail call conversations, I had expected that these items would be readily accessible and easily found, despite THE RESIDENCE's condition.

14. When, after approximately one hour of searching, THE SUBJECT ITEMS had not been located, I contacted Ransom via telephone. I asked Ransom if she had removed any hand-written documents or electronic devices from THE RESIDENCE following the execution

of the search associated with 20-MR-936. Ransom denied that she had done so, stating she had only removed Uehara's "case file" from THE RESIDENCE. I explained to Ransom that I did not wish to intrude on her family's privacy any more than was necessary to recover the items I had authorization to seize, and offered that if she could come to THE RESIDENCE and assist in the location of those items, I would conclude the search and leave with those items, more quickly ending the law enforcement intrusion into THE RESIDENCE and Ransom's privacy. Ransom agreed, and stated that she would come to the residence "within the hour."

15. Following my conversation with Ransom, the search continued until approximately 2:00 PM. Although agents recovered many items of evidence, to include paper documents and electronic devices, from THE RESIDENCE, neither of THE SUBJECT ITEMS was located. Although I attempted, after waiting the agreed upon hour, multiple times to contact Ransom via telephone, she never arrived at the residence, nor were my calls answered.

16. I also attempted to make contact with Johns via the number she had listed on Ransom's bail bond paperwork, but my calls went unanswered.

17. Following the conclusion of the search, I waited in the vicinity of THE RESIDENCE, with a vantage of the door, until approximately 3:30 PM, and observed no activity.

18. On July 16, 2020, I observed a vehicle registered to Johns, THE VEHICLE, parked in the vicinity of THE PREMISES. I approached the door of THE PREMISES and observed Johns, who spoke briefly to me via a closed window before opening the door. Johns confirmed her identity. I asked to speak with Ransom. Johns closed the door to THE PREMISES and returned a short time later with Uehara's brother, KU, and Ransom. I explained to Ransom that I was there for the SUBJECT ITEMS, and described these items to Ransom. Ransom made

no statements of substance to me, other than to state that she wished to speak with her attorney, and produced no items.

19. A short time later, agents observed Ransom, Johns, KU, and Ransom's minor son exit the residence with two plastic totes and enter THE VEHICLE. Agents followed THE VEHICLE and later observed Ransom and KU exit the vehicle with the same two plastic totes at the address of Uehara's attorney's office. Agents observed Ransom to occupy the driver's seat of THE VEHICLE when it was in transit.

20. I later confirmed with Uehara's attorney that THE SUBJECT ITEMS were not among the items contained in the totes that were left at his office.

21. Because of the information I learned from the jail calls, as articulated in 20-MR-989, I believe that Ransom located evidence of criminal activity, specifically THE SUBJECT ITEMS, within THE RESIDENCE following the execution of the search authorized by 20-MR-936. I further believe that because she had recently located THE SUBJECT ITEMS, these items should have been readily found during the execution of the search authorized by 20-MR-989.

22. Because THE SUBJECT ITEMS were not found during the search authorized by 20-MR-989, I believe that Ransom has knowledge of the present whereabouts of THE SUBJECT ITEMS, be they still secreted within THE RESIDENCE, or, contrary to Ransom's statement, removed from THE RESIDENCE.

23. Because Ransom did not appear at THE RESIDENCE following the call, via THE SUBJECT ACCOUNT in which she agreed to do so on July 10th, and because my subsequent calls to Ransom and Johns have gone unanswered, I believe that Ransom is attempting to avoid contact with me. I further believe that because our last contact involved discussion of the location of evidence items, that Ransom is attempting to avoid contact in relation to THE

SUBJECT ITEMS, and that she may have removed THE SUBJECT ITEMS from THE RESIDENCE, contrary to her statement.

24.     Because I believe that Ransom is dependent on Johns for transportation, and because agents observed Ransom to occupy the driver's seat of THE VEHICLE, and in fact to transport items of apparent relevance to Uehara's case in THE VEHICLE, I believe it is reasonable to search THE VEHICLE for THE SUBJECT ITEMS.

25.     In relation to this matter, I also requested a search warrant related to the location of the phone with which Ransom is using to place jail calls to Uehara. This warrant, later filed as 20-MR-1016, was authorized on July 13, 2020 by the Honorable U.S. Magistrate Judge John F. Robbenhaar. The information produced responsive to this warrant indicates that for the majority of the time period dating between July 14, 2020 at approximately 12:43 PM to present, including overnight, the phone used by Ransom has been in the vicinity of THE PREMISES. I therefore believe that Ransom is occupying THE PREMISES as a residence. I therefore believe that it is reasonable to search THE PREMISES for THE SUBJECT ITEMS.

## CONCLUSION

26.     Based on the aforementioned information and investigation, I submit that probable cause exists to search THE PREMISES and THE VEHICLE, as more particularly described in Attachment A and to seize the items described in Attachment B.

## REQUEST FOR SEALING

27.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because

their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

Jacob vanBrandwijk
Special Agent
Federal Bureau of Investigation

Telephonically sworn and electronically signed on July 16, 2020

Honorable Jerry H. Ritter
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

### *Property to be searched*

1.     5555 Wyoming Boulevard NE, Apartment 5605, Albuquerque, New Mexico, 87109, further described as an apartment in two level apartment building with ground level access, brown shingled second floor siding, light brown brick exterior, and brown door marked 5605, bearing a wreath, pictured below.





2.     A red Dodge Journey bearing New Mexico license plate PNX253, pictured above.

ATTACHMENT B

*Property to be seized*

1. A notebook, diary, or journal, blue or turquoise in color and with gold colored lining, marked "moments of genius."

2. Apple iPhone or iPad devices used by KaLani Uehara or any member of her family.

3. Further, from within item 2, as described in the section "Computers, Electronic Storage, and Forensic Analysis of 20-MR-936:

   a. All records relating to violations of 18 U.S.C. § 875, 18 U.S.C. § 1028, 18 U.S.C. § 1030, 18 U.S.C. § 2251, and 18 U.S.C. § 2261A those violations involving KaLani Uehara, including records relating to victims VJW; RW; DG; NC; NH, an attorney at VJW's firm; GG; JP; JP's wife; CS, a teacher with APS; ES, an APS Police Detective; RC, a realtor; SG, an APS Police employee, or others relevant to this investigation and pertaining to:

      i. Any and all records reflecting threats or extortion sent in interstate communications

      ii. Any and all records reflecting accounts in the name of one of the listed victims, either established by one of the listed victims or established by another person for the purpose of impersonating the listed victim

      iii. Any and all records reflecting the unauthorized access of electronic devices and accounts, including email accounts related to one of the listed victims

      iv.      Any and all records related to the personal information of the listed victims, including names, dates of birth, addresses, email addresses, telephone numbers, passwords, or similar information about family members of the listed victims.